UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JASON L. READ**<br>**360 Rileyville Road**<br>**Ringoes, N.J. 08551**<br><br>**Plaintiff,**<br>**v.**<br><br>**ATTORNEY GENERAL TODD W. BLANCHE in his official capacity; UNITED STATES DEPARTMENT OF JUSTICE; FBI DIRECTOR KASHYAP PATEL in his official capacity; FEDERAL BUREAU OF INVESTIGATION**<br><br>**Defendants.** | Case: 1:26–cv–03898 JURY DEMAND<br>Assigned To : AliKhan, Loren L.<br>Assign. Date : 11/2/2026<br>Description: Pro Se Gen. Civ. (F–DECK)<br>**Civil Action No.** ________________ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Jason L. Read ("Read") for his Complaint against Defendants Attorney General Todd Blanche, in his official capacity; United States Department of Justice; FBI Director Kashyap Patel, in his official capacity; and Federal Bureau of Investigation ("Defendants"), states as follows:

**Nature of the Action**

1. Jason L. Read was recruited to join the Federal Bureau of Investigation by Director Robert S. Mueller III, in part because of his background as a rescue chief who responded to the WTC following the 9/11 attacks and as an Olympic champion (rowing). Read served his country as a Special Agent for more than 11 years. In April 2023, the FBI proposed removing Read from the rolls of the FBI due to conduct allegedly occurring between 2015 and 2017. The proposal to

RECEIVED
NOV 02 2026
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

remove Read identified the Assistant Director of the Federal Bureau of Investigation Office of Professional Responsibility, as the final decisionmaker. On October 20, 2023, Acting Assistant Director of the Office of Professional Responsibility, Ben L. Beyers, II ("A/AD Beyers"), issued a decision in which he rejected the proposal to terminate Special Agent Read and instead decided that he would be suspended, without pay, for 60 calendar days ("Final Decision"). The disciplinary decision was also reflected in a "Last Chance Agreement" which A/AD Beyers' offered and Read accepted on August 2, 2023. One business day following A/AD Beyers' Final Decision, Former Deputy Director Paul Abbate summarily fired Special Agent Read, notwithstanding A/AD Beyers' Final Decision and the Last Chance Agreement. The termination was effective immediately, without affording Special Agent Read an appeal or any due process rights. This action deprived Special Agent Read of his property interest in his employment without due process, in violation of his rights under the Fifth Amendment to the Constitution. The action also breached the FBI's Last Chance Agreement with Special Agent Read, without any basis for doing so. This lawsuit seeks equitable and injunctive relief, including reinstatement and back pay, for these egregious violations of Special Agent Read's rights under the Constitution, as well as actual damages for the breach of contract.

**Parties, Jurisdiction, and Venue**

2. Plaintiff, Jason Read, is a citizen of the United States, who resides in New Jersey. Special Agent Read worked for the Federal Bureau of Investigation until his wrongful discharge on October 23, 2023; Read was not notified until November 1, 2023 of his termination.

3. Defendant United States Department of Justice ("DOJ") is the federal agency for which Read was employed and includes Defendant, Federal Bureau of Investigation ("FBI"), to which Read was assigned to work.

4. Defendants DOJ and FBI are federal agencies within the meaning of 5 U.S.C. §552a(a)(1).

5. Defendant Todd Blanche is the Attorney General of the United States and is head of DOJ, where Special Agent Read was employed. Attorney General Blanche is sued in his official capacity only.

6. Defendant Kash Patel is the Director of the FBI, to which Special Agent Read was assigned to work. Director Patel is sued in his official capacity only.

7. This lawsuit arises under the Constitution of the United States and presents a federal question within the Court's jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff further invokes the waiver of sovereign immunity provided by 5 U.S.C. § 702 for claims seeking relief other than money damages. Plaintiff seeks declaratory, injunctive, and equitable relief, including reinstatement to his employment with the FBI, pursuant to 28 U.S.C. § 2201 and the Court's applicable equitable authority. Upon an appropriate determination that Plaintiff was subjected to an unjustified or unwarranted personnel action, Plaintiff also seeks back pay and restoration of employment benefits to the extent authorized by the Back Pay Act, 5 U.S.C. § 5596. Plaintiff separately asserts a claim for breach of the Last Chance Agreement and seeks actual damages and other legally available relief for that breach.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the unconstitutional and otherwise unlawful actions by Defendant took place in this District.

## Factual Background

9. Special Agent Read has devoted his career to the protection of his country. He

began his service with the FBI in 2012 as a Special Agent. After graduating from the FBI Academy in Quantico, Virginia, Special Agent Read was assigned to the Springfield Field Office, later transferring to the New York Field Office. Special Agent Read worked for the New York Joint Terrorism Task Force from 2015 through January 2019, after which time he joined the New York Special Operations Group ("SOG"). Once in SOG, Special Agent Read was appointed to Team Leader, a role he served regularly between 2019 and 2021; he was an Assistant Team Leader from 2022 through 2023.

10. During his distinguished career in the FBI, Special Agent Read worked on very high profile and sensitive investigations. Special Agent Read has received many awards for his successes – successes which include, *inter alia,* disrupting a child prostitution operation, disrupting a terrorist attack, coordinating the arrests of human traffickers, preventing the assassination of an Iranian dissident in New York City, serving as a case agent for terrorist cases in West Africa, finding missing children, intercepting top-secret intelligence from a threat country, and traveling extensively overseas on sensitive HUMINT and CTD mission.

11. From 2013 through 2019, Special Agent Read consistently earned the overall rating of Successful or Excellent on his Performance Reviews; for the category of Critical Element #3 "Providing Professional Service to Others", Special Agent Read received the rating of Excellent or Outstanding. From 2020 through 2023, Special Agent Read received the rating of Consistent Performer. Special Agent Read was never placed on a Performance Improvement Plan ("PIP").

12. In January 2019, Special Agent Read was the subject of a report to the Office of Professional Responsibility. An investigation was opened on March 6, 2019, focusing primarily on conduct allegedly occurring in 2015-2017. There were no allegations of

misconduct occurring over the period of 2019-2023 and Special Agent Read continued working for the FBI on sensitive matters during the pendency of the investigation. Special Agent Read, was not aware of the misconduct allegations until October 2020. At no time was Special Agent Read required to undergo additional training for the alleged policy violations or restricted in his operational role as a Special Agent.

13. On April 17, 2023, OPR Acting Unit Chief ("A/UC"), Samantha Lippoff, issued a letter proposing dismissing Special Agent Read from the rolls of the FBI ("Proposal Letter"), based on five specifications of alleged misconduct with standard penalties ranging from censure to a 30-day suspension.

14. The Proposal Letter provided "[t]he Assistant Director (AD) of the Office of Professional Responsibility (OPR) will make the final decision in this matter after consideration of your written and/or oral response(s), should you choose to submit either or both."

15. Special Agent Read elected to provide a written response. In addition, Special Agent Read also traveled to the District of Columbia to make an oral presentation to an OPR panel that included A/AD Beyers, A/UC Lippoff and two additional staff attorneys.

16. After reviewing the issue and hearing from Special Agent Read, A/AD Beyers offered Read, within a few hours of the hearing, the opportunity to enter into a Last Chance Agreement that unsubstantiated two of the alleged offenses and reduced the penalty to a 60-day suspension. On August 2, 2023, Special Agent Read accepted the proposed Last Chance Agreement. The Last Chance Agreement provided, in part:

> SA Read agrees to complete a suspension of 60 calendar days by remaining in Suspension Status until he has recorded a total of 44 complete work days of Suspension in WebTA. The required 44 days of lost pay includes any complete 8-hour workday already recorded in WebTA as "Suspension."

SA Read agrees that OPR will retain jurisdiction over this matter, and that failure to abide by this agreement will cause OPR to reopen this matter and summarily dismiss the employee.

SA Read further agrees that the OPR Assistant Director's decision will constitute the FBI's final decision in this matter, unless the matter is reopened based on credible evidence of a violation of this agreement. SA Read agrees to waive his right to appeal to the FBI's internal disciplinary entity.

SA Read further agrees that if he engages in any other serious misconduct, the appropriate sanction will be summary removal from the rolls of the FBI.

A true and correct copy of the Last Chance Agreement is attached hereto as Exhibit A and incorporated herein by reference;

Plaintiff intends to seek leave of Court to submit the Final Decision Letter as Exhibit B. under seal;

17. Per the terms of the Last Chance Agreement, the parties expressly agreed that the Assistant Director's decision would be the final decision and that SA Read could only be removed if he engaged in other serious misconduct or violated the Last Chance Agreement, thereby expressly imposing substantive limitations on official discretion.

18. On October 20, 2023, A/AD Beyers issued the FBI's final decision, substantiating only three of the five specifications, finding that two of the most serious allegations were unsubstantiated ("Final Decision"). The Final Decision rejected A/UC Lippoff's proposal to remove Plaintiff from his employment with the FBI. Instead, A/AD Beyers mitigated the proposed penalty to a sixty (60) day suspension. A true and correct copy of A/AD Beyers' October 20, 2023 Final Decision is attached hereto as Exhibit B and incorporated herein by reference.

19. Explaining the basis for his Final Decision, A/AD Beyers noted that "[b]ased on

the circumstances of this case, including the supplemental information you presented, and considering the 12 *Douglas* Factors, including, but not limited to, consistency with precedent, the Penalty Guidelines, prior disciplinary history, and aggravating/mitigating factors, I am suspending you from duty, without pay, for 60 calendar days, not dismissing you as originally proposed."

20. A/AD Beyers' Final Decision made it clear that, as the deciding official, A/AD Beyers, and thus, the FBI, agreed to the terms of the Last Chance Agreement, stating:

> As the deciding official in this matter, I have given full and impartial consideration to all documentation and evidence upon which your proposed dismissal was based, your written response dated July 27, 2023, the character references submitted on your behalf, your oral presentation on August 1 2023, and your "Last Chance Agreement" executed on August 3, 2023.

21. A/AD Beyers' Final Decision memorialized the consideration Special Agent Read provided in exchange for the lower penalty, specifically, the waived appeal rights, stating:

> In your Last Chance Agreement, you agreed this letter, together with the Last Chance Agreement, reflect the Bureau's final disposition of this disciplinary inquiry, and no appeal will be taken.

22. A/AD Beyers' Final Decision incorporated the Last Chance Agreement, which provided that the OPR Assistant Director's decision would constitute the FBI's final disposition of the disciplinary matter unless reopened based on credible evidence of a violation of the Agreement. The Agreement separately provided for summary removal in the event of other serious misconduct.

23. Notwithstanding the FBI's representation that the October 20, 2023 Final Decision constituted the final disposition of Plaintiff's disciplinary matter, Deputy Director Paul Abbate reversed that decision on Monday, October 23, 2023, the next business day. Deputy Director Abbate represented that he had reviewed extensive investigative and disciplinary materials, including Plaintiff's written submissions, the audio recording of an approximately two-and-one-

half-hour OPR hearing, and the OPR Final Decision. Deputy Director Abbate then reversed OPR's prior determination that one of the allegations was unsubstantiated, notwithstanding its resolution in the Last Chance Agreement and the October 20, 2023 Final Decision. He increased the penalty to dismissal and declared his decision final and not subject to further administrative review ("Termination Letter"). Plaintiff intends to seek leave of Court to submit Deputy Director Abbate's Termination Letter as Exhibit C under seal.

24. The Termination Letter did not identify any conduct by Special Agent Read that breached the Last Chance Agreement or any new allegations of misconduct.

25. Special Agent Read's termination deprived him of the standard internal due process afforded to other FBI employees – processes which were promised to Special Agent Read in the initial Proposal Letter. The FBI's standard disciplinary process consists of an appeal to a five-member Disciplinary Review Board comprised largely of career management and executive level officials. Had Special Agent Read not accepted the Last Chance Agreement, he would have retained his appeal rights had A/AD Beyers terminated him.

26. Upon information and belief, no FBI policy mentioned Last Chance Agreements or explained that they could be overturned. In September 2021, the Department of Justice Office of the Inspector General issued its *Review of the Federal Bureau of Investigation's Adjudication Process for Misconduct Investigations* expressly noting concerns with the lack of any FBI policy relating to such use stating:

> We found that FBI OPR has been using last chance agreements with increasing frequency yet this option is nowhere mentioned in FBI policy. Additionally, when we asked FBI OPR staff about the use of last chance agreements, we found that they did not agree on a consistent set of criteria for their use.

27. In late 2023 – *after* Former Deputy Director Abbate reversed A/AD Beyers's Final Decision, the FBI apparently recognized the significant deprivation of due process issue resulting from its deviation from its disciplinary process and the lack of notice to employees of the Deputy Director's purported authority to unilaterally revoke Last Chance Agreements. In an attempt to remedy this significant defect, the FBI purportedly sent employees with open disciplinary cases amended letters to provide notice, for the first time, that discipline rendered by OPR could be overturned by the FBI's Deputy Director. This attempted remedy did not apply to Special Agent Read because Mr. Read never received any such notice: the Former Deputy Director had already reversed A/AD Beyer's decision and terminated plaintiff, without any appeal rights.

28. Had Special Agent Read known that Former Deputy Director Abbate could, *sua sponte,* nullify the Last Chance Agreement, he never would have never signed and waived his appeal rights.

29. Special Agent Read requested Former Director Christopher Wray to review the matter and to reverse Former Deputy Director Abbate's decision. Director Wray did not respond.

30. Former Deputy Director Abbate's rejection of the Final Decision of A/AD Beyers, the designated final decisionmaker in the disciplinary process for Special Agent Read, and his denial of Read's promised and standard appeal procedures, denied Read due process he is entitled to receive.

31. Former Deputy Director Abbate's termination of Special Agent Read breached the Last Chance Agreement.

32. When Special Agent Read accepted the Last Chance Agreement, he relinquished any appeal rights and accepted the 60-day suspension as the "final decision in this matter."

A/AD Beyers confirmed the FBI's agreement to these terms when he referenced and relied upon the Last Chance Agreement in his Final Decision.

33. A Last Chance Agreement is a settlement agreement and a settlement agreement is a contract. Accordingly, the Last Chance Agreement became an enforceable contract and under that contract, Special Agent Read could not be terminated based on the alleged misconduct that occurred between 2015 – 2017.

34. Former Deputy Director Abbate did not allege that Special Agent Read engaged in serious misconduct after the Last Chance Agreement or that Read violated the terms of the Last Chance Agreement.

35. Plaintiff alleges that the FBI's established disciplinary procedures, the Last Chance Agreement, and the October 20, 2023 Final Decision created substantive limitations on the FBI's discretion to reopen the adjudicated disciplinary matter. Specifically, the Agreement provided that the OPR Assistant Director's decision would constitute the FBI's final decision unless the matter were reopened based on credible evidence of a violation of the Agreement. Plaintiff alleges that these limitations, together with the applicable FBI personnel rules and representations, established a legitimate claim of entitlement to continued employment subject to the conditions governing removal.

36. The FBI's explicit written agreement with Special Agent Read, in which he offered as valuable consideration the relinquishment of legal rights and obtained the FBI's agreement that Read would not be fired over these issues, provided a property interest.

37. In the employment context, agencies cannot relax or modify regulations that provided the only safeguard individuals have against unlimited agency discretion in hiring and termination. Here, the FBI did not comply with its own processes.

38. The FBI expressly designated A/AD Beyers as the deciding official and then disregarded his decision in violation of its own processes.

39. Former Deputy Director Abbate fired Special Agent Read and then declared that this decision was final and unappealable, depriving Read of any real due process.

40. A/AD Beyers' decision to suspend, but not fire Special Agent Read, was authorized, final and binding on the FBI. The FBI deprived Read of his property interest in his job by firing him the next business day without affording him any procedural due process.

41. Plaintiff alleges that Deputy Director Abbate's unilateral reversal of the October 20, 2023 Final Decision contravened the finality provisions of the Last Chance Agreement and the disciplinary procedures identified in Plaintiff's April 17, 2023 Proposal Letter.

42. The FBI's Office of Professional Responsibility Assistant Director makes the final decision on each proposed adverse action. According to FBI policy, the Assistant Director may impose the proposed penalty or a lower penalty, but not a higher penalty. In this case, A/AD Beyers elected to impose a lower penalty.

43. Had Special Agent Read not agreed to the Last Chance Agreement, and had A/AD Beyers imposed the harsher penalty of removal, Read would have had an immediate right to appeal the decision to the Office of Disciplinary Review ("ODR"). Read waived this right when he accepted the Last Chance Agreement.

44. Former Deputy Director Abbate violated FBI policy when he, *sua sponte,* issued a decision imposing a higher penalty and then denied Special Agent Read's right to appeal to the ODR.

**COUNT ONE: DEPRIVATION OF DUE PROCESS UNDER THE LAW IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

45. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiff entered into a Last Chance Agreement with Defendant whereby Defendant agreed that Plaintiff would not be terminated, but instead suspended, in exchange for Plaintiff's waiver of certain appeal rights.

47. The Last Chance Agreement was memorialized in the Final Decision by the appropriately designated deciding final official.

48. The Last Chance Agreement provided for summary dismissal if Plaintiff engaged in other serious misconduct or violated the Agreement, and specified that the OPR Assistant Director's decision would constitute the FBI's final disposition unless the matter was reopened based on credible evidence of an Agreement violation.

49. The FBI's policies and procedures regarding discipline and disciplinary appeals required Special Agent Read to have the opportunity to be heard in front of the final decision maker.

50. The FBI's policies and procedures regarding discipline designated A/AD Beyers as the final decision maker.

51. While Plaintiff had an opportunity to make an oral presentation to an OPR panel, which included A/AD Beyers, Deputy Director Abbate was not part of that panel. Plaintiff received no advance notice that the October 20, 2023 Final Decision would be reversed, no opportunity to respond to the proposed reversal, and no subsequent administrative appeal of the resulting termination decision. Accordingly, Plaintiff was denied an opportunity to be heard regarding the Deputy Director's reversal of the FBI's Final Decision.

52. The FBI's policies and procedures required that Special Agent Read have an appeal

right to the Disciplinary Review Board – an opportunity that was denied to him by Deputy Director Abbate.

53. The Last Chance Agreement, the Final Decision and the FBI's disciplinary and appeal processes formed the basis for Special Agent Read's property interest, which required due process protections.

54. Defendant disregarded its own policies and instead refused to abide by the Final Decision of the appropriately designated deciding final official. Instead, Defendant fired Special Agent Read, depriving him of an appeal procedure through the Disciplinary Review Board, which was a standard part of the FBI's disciplinary process, the applicability of which was confirmed in the Proposal Letter.

55. Defendant's actions deprived Plaintiff of his property interest in his public employment without due process of law, in violation of the Fifth Amendment to the Constitution.

56. Special Agent Read has no other alternative process to obtain relief for the violation of his rights under the Constitution.

**COUNT TWO: BREACH OF CONTRACT**

57. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 56 as though fully set forth herein.

58. On August 2, 2023, Special Agent Read agreed to enter into the Last Chance Agreement after presented to him. Explicitly, by its plain language, a Last Chance Agreement implies the reality of a "chance." Less than 24 hours later, and before the ink was even dry on plaintiff's signature, Abbate made an arbitrary, unilateral decision to revoke the executed Last Chance Agreement. Plaintiff was given no chance to respond.

59. A/AD Beyers, acting as the FBI's designated disciplinary decisionmaker, expressly acknowledged and implemented the Last Chance Agreement in his October 20, 2023 Final Decision, confirming the agreed suspension and Plaintiff's waiver of internal appeal rights. The Last Chance Agreement provided that OPR would retain jurisdiction over the matter, that credible evidence of an Agreement violation could justify reopening, and that other serious misconduct could result in summary removal.

60. A/AD Beyers was authorized by the FBI to enter into this Agreement.

61. On October 23, 2023, the FBI repudiated the agreed finality of the disciplinary disposition by reversing the October 20, 2023 Final Decision and ordering Plaintiff's dismissal. The termination letter identified neither credible evidence of a violation of the Last Chance Agreement nor subsequent serious misconduct. Plaintiff alleges that this reversal contravened the express conditions governing reopening of the disciplinary matter and deprived Plaintiff of the benefit of his agreement to waive internal appeal rights.

62. There is no allegation that Special Agent Read engaged in misconduct, let alone serious misconduct, after the parties entered into the Last Chance Agreement.

63. Plaintiff reasonably relied upon the FBI's express representations concerning the finality of the disciplinary disposition when he accepted the Last Chance Agreement and relinquished his internal appeal rights. The FBI obtained the benefit of Plaintiff's waiver and subsequently reversed the agreed disposition without identifying a violation of the Agreement or other serious misconduct. Had Plaintiff known that the Deputy Director could unilaterally reverse the final disposition notwithstanding the Agreement's express terms, Plaintiff would not have accepted the Agreement or surrendered his appeal rights. Plaintiff thereby suffered detrimental reliance and was deprived of the benefit of his bargain.

64 The actions of Abbate beg a very simple question: why did the FBI draft a Last Chance Agreement, present to plaintiff for execution, and then revoke it in less than 24 hours?

65. The FBI's breach of the Last Chance Agreement has damaged Special Agent Read.

WHEREFORE, the Plaintiff requests that this Court:

1) Declare that Defendant has violated Plaintiff's rights under the Constitution;
2) Enjoin Defendant from further violation of Plaintiff's rights;
3) Reinstate Plaintiff into the position he would have occupied absent Defendant's violation of his constitutional rights;
4) Award Plaintiff back pay as equitable relief from the unlawful termination of his employment pursuant to the Back Pay Act;
5) Award actual damages sustained by Plaintiff;
6) Award pre-judgment and post-judgment interest on all amounts awarded herein;
7) Award Plaintiff his costs and reasonable attorney's fees incurred in this action and the claims that preceded it; and
8) Award such other relief as this Court deems just.

Respectfully submitted,

Jason L. Read

Date 7/1/2026

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Jason L. Read respectfully demands and requests that all issues herein properly triable by jury be so tried.

Respectfully submitted,

Date: 11/1/2026

Jason L. Read

360 Rileyville Road

Ringoes, N.J. 08551

Telephone: 609.743.8934

E-Mail: jasonlread@gmail.com